```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION

PAMELA M. PERRY, M.D.,

                    Plaintiff,

vs.                                  Case No.  2:13-cv-36-FtM-29DNF

THE SCHUMACHER GROUP OF LOUISIANA, a
Louisiana   Corporation,   THE
SCHUMEACHER GROUP OF FLORIDA, INC.,
a  Florida  Corporation,  COLLIER
EMERGENCY  GROUP,  LLP,  a  Florida
limited  liability  company,  and
HEALTH MANAGEMENT ASSOCIATES, INC.,

                    Defendants.
_____
```

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Counts VI, VII, and VIII of Plaintiff's Fourth Amended Complaint (Doc. #65) filed on August 29, 2013. Plaintiff filed a Response to Defendants' Motion (Doc. #69) on September 23, 2013. Defendants filed a Reply (Doc. #72) on October 14, 2013. For the reasons set forth below, the motion is granted.

### I.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**II.**

On August 15, 2013, plaintiff Pamela Perry, M.D. (Dr. Perry or plaintiff) filed a Fourth Amended Complaint asserting claims for racial discrimination under Title VII (Count I), gender discrimination under Title VII (Count II), racial discrimination under 42 U.S.C. § 1981 (Count III), retaliation under Title VII (Count IV), trade libel (Count V), negligence (Count VI), breach of contract (Count VII), and breach of implied duty of good faith and fair dealing (Count VIII).  (Doc. #61.)  In support thereof, plaintiff alleges the following:

In 2011, the Schumacher Group of Louisiana and the Schumacher Group of Florida (collectively, the Schumacher Group) formed the Collier Emergency Group to enter into an Exclusive Agreement for Emergency Services (Exclusive Agreement) with Naples HMA to staff the emergency departments at two hospitals under the Physician's Regional Healthcare System: Physician's Regional - Pine Ridge (Pine Ridge) and Physician's Regional - Collier Boulevard (Collier). (Doc. #61, ¶¶ 15-17.)  Pursuant to the terms of the Exclusive Agreement, Naples HMA had the right to approve any physician submitted by the Schumacher Group or the Collier Emergency Group to work at Pine Ridge.  (Id. ¶ 18.)

In June of 2011, Dr. Perry, an African American female and emergency physician, was selected by Naples HMA to be the Medical

Director at Pine Ridge. (Id. ¶ 20.) The position was subsequently offered to Dr. Perry by the Collier Emergency Group. Dr. Perry accepted the position and entered into three separate agreements with the Collier Emergency Group: a Business Associate Agreement, a Physician Agreement, and a Medical Director Agreement. (Id. ¶ 21.) During her tenure as Medical Director, Dr. Perry made significant improvements at Pine Ridge and received ample recognition for her hard work and dedication. (Id. ¶¶ 37-49.)

While Dr. Perry was making improvements at Pine Ridge, Dr. David Childress, her counterpart at Collier and a Caucasian male, was doing the exact opposite. (Id. ¶¶ 50-51.) Although Dr. Perry's performance exceeded that of Dr. Childress, she was not afforded the same leniency and protection that was provided to Dr. Childress. (Id. ¶ 52.) In addition to the disparate treatment, Dr. Perry learned that Bobbie Hamilton, the Emergency Department Nursing Director at Pine Ridge, had issues with her because of her race and gender. During her time at Pine Ridge, Hamilton made derogatory and racists comments regarding Dr. Perry. (Id. ¶¶ 53, 63-73.) On March 7, 2012, Dr. Perry learned that Hamilton and Carol McConn, the Chief Nursing Officer at Pine Ridge, falsely claimed that she was not acting in compliance with her role as a physician and Medical Director. (Id. ¶¶ 74-76.) The Schumacher Group and the Collier Emergency Group were aware of the issues

pertaining to Hamilton and informed Dr. Perry that they will "take care of [her]."  (Id. ¶ 80-82.)

On April 5, 2012, the Schumacher Group informed Dr. Perry that Naples HMA was exercising its contractual right to terminate her employment and was giving her the required notice of sixty days. Plaintiff, however, was later informed that her last shift would occur before the expiration of the sixty days.  (Id. ¶ 87.) Following her termination, Dr. Perry filed a complaint with the EEOC and was issued a right to sue letter.  (Id. ¶¶ 90-92.)

### III.

The Schumacher Group of Louisiana, the Schumacher Group of Florida, and the Collier Emergency Group (collectively, the Schumacher defendants) contend that Counts VI, VII, and VII should be dismissed because plaintiff has failed to state a claim upon which relief can be granted.

**A.  Count VI - Negligence**

Count VI of plaintiff's Fourth Amended Complaint alleges that the Collier Emergency Group was negligent in carrying out its duties under the Exclusive Agreement.  Paragraph 13.3 of the Exclusive Agreement provides as follows:

> The Medical Provider [the Collier Emergency Group] will ensure that each Emergency Professional will immediately report any suspected violations of law or other questionable conduct involving the Hospital or any employee to the Hospital's Compliance Officer and/or the HMA confidential helpline or post office box.  This

>     provision will apply even after this Agreement expires or
>     is terminated.

(Doc. #61-3, p. 7.) Plaintiff alleges that the Collier Emergency Group breached its duty under paragraph 13.3 by instructing her to not report the alleged harassment to Naples HMA, and that she would have reported the harassment absent such an instruction, which would have presumably resulted in an investigation of her complaints. (Doc. #61, ¶¶ 166-167.)

In order to state a claim for negligence under Florida law, the plaintiff must allege (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close casual connection between the conduct and the resulting injury; and (4) actual loss or damages. Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007) (citing Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)). The Schumacher defendants assert that plaintiff has not and cannot allege the existence of a duty because Dr. Perry was not a party to the Exclusive Agreement nor was she an intended third-party beneficiary.

A duty of care is "a minimal threshold legal requirement for opening the courthouse doors." McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla. 1992) (footnote and emphasis omitted). In order to establish the existence of a duty, the plaintiff must demonstrate that the activity at issue created a foreseeable zone

-6-

of risk. Williams v. Davis, 974 So. 2d 1052, 1056 n.2 (Fla. 2007) (citing McCain, 593 So. 2d at 502). "The proper way of determining whether a duty existed is to decide whether the defendant's actions created a foreseeable zone of risk, not by whether the specific injury suffered was foreseeable by the defendant." Cheeks v. Dorsey, 846 So. 2d 1169, 1172 (Fla. 4th DCA 2003) (citing Florida Power & Light Co. v. Periera, 705 So. 2d 1359, 1361 (Fla. 1998)). The duty of care in a negligence action is a question of law. Id.

Here, plaintiff acknowledges that she lacks contractual privity or third-party beneficiary status, but nonetheless asserts that she was owed a duty because (1) the Collier Emergency Group had supervisory authority over her under the Exclusive Agreement; (2) she was a known third party who would be harmed if the Collier Emergency Group was negligent in carrying out the Exclusive Agreement; and (3) the Collier Emergency Group falsely told her that she did not have to report incidents to Naples HMA.

### 1. Supervisory Authority

Plaintiff first asserts that she is permitted to recover for negligence in the absence of contractual privity pursuant to the holding in A.R. Moyer, Inc. v. Graham, 285 So. 2d 397 (Fla. 1973). In A.R. Moyer, the Supreme Court of Florida held that "a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent

performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding the absence of privity." Id. at 402. Given the supervisory nature of the relationship between the architect and the general contractor, the architect must "be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor." Id. at 401. The same holds true for engineers. Id. Consequently, a cause of action for negligence will stand against a supervising architect or engineer when faced with allegations that the architect or engineer was negligent in its exercise of supervision and control of the contractor. Id.

The Schumacher defendants correctly assert that plaintiff's reliance on A.R. Moyer is misplaced because the holding has been explicitly limited to it facts. See Casa Clara Condo. Ass'n v. Charley Toppino and Sons, Inc., 620 So. 2d 1244, 1248 n.9 (Fla. 1993) (holding that A.R. Moyer is limited strictly to its facts). See also Posen Constr., Inc. v. Lee County, 921 F. Supp. 2d 1350, 1361 (M.D. Fla. 2013). Because the case currently before the Court is far removed from the field of construction and does not involve general contractors, architects, or engineers, plaintiff's claim of negligence cannot rest on the theory of supervisory authority as set forth in A.R. Moyer.

### 2. Foreseeable Zone of Risk

Plaintiff also argues that she can maintain her claim for negligence because the Collier Emergency Group owed her a duty, as a known third party, not to cause her harm by failing to comply with its obligations under the Exclusive Agreement.  In essence, plaintiff asserts that the Collier Emergency Group should have foreseen that compliance with paragraph 13.3 of the Exclusive Agreement was necessary for plaintiff's protection.  In response, the Schumacher defendants assert that plaintiff cannot maintain her claim of negligence under this theory due to the absence of actual harm.

A negligence claim premised on a duty created by the foreseeable risk of harm to others will generally not lie absent bodily injury or property damage.  <u>Monroe v. Sarasota Cnty. Sch. Bd.</u>, 746 So. 2d 530, 531 (Fla. 2d DCA 1999) ("[W]e continue to hold, as a general rule, that bodily injury or property damage is an essential element of a cause of action in negligence. We will expand the common law tort of negligence, waiving that essential element only under extraordinary circumstances . . . .").  Here, the harm allegedly suffered by plaintiff includes the loss of her job at Pine Ridge and the loss of income.  (Doc. #61, ¶ 169.)  The economic loss allegedly suffered by plaintiff does not amount to actual bodily injury or property damage; thus, she cannot maintain

her claim of negligence by asserting that the Collier Emergency Group's breach of the Exclusive Agreement created a foreseeable zone of risk. See Virgilio v. Ryland Group, Inc., 695 F. Supp. 2d 1276, 1285 (M.D. Fla. 2010) (holding that defendants were entitled to a judgment as a matter of law on plaintiffs' negligence claim because the economic harm suffered by plaintiffs was not the type of harm defendants were required to guard against under Florida negligence law).

### 3. False Information Negligently Supplied

In her final argument, plaintiff contends that she can maintain her claim for negligence because the Collier Emergency Group provided her with false information. Unlike a claim premised on a foreseeable zone of risk, a party may recover economic losses arising from a misrepresentation that is made in a negligent manner. Monroe, 746 So. 2d at 537. A claim for negligent misrepresentation, however, evolved from the intentional tort of fraud, not negligence, and requires proof of the following elements: (1) a misrepresentation of material fact; (2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representor intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the

misrepresentation. Coral Gables Distrib. v. Milich, 992 So. 2d 302, 303 (Fla. 3d DCA 2008); Tiara Condominium Ass'n v. Marsh & McLennan Cos., 607 F.3d 742, 747 (11th Cir. 2010).

Here, plaintiff has failed to allege that there was a misrepresentation of a material fact or that she justifiably relied upon the misrepresentation. Furthermore, the Court finds that plaintiff has failed to notify the Schumacher defendants as to the exact basis of her claim because Count VI states the legal standard for a claim of negligence, not negligent misrepresentation. Based on the foregoing, the Court finds that plaintiff has failed to state a claim of negligence; therefore, Count VI is dismissed.

**B. Count VII - Breach of Contract**

In Count VII of the Fourth Amended Complaint, plaintiff alleges that the Schumacher defendants breached the Physician Agreement by instructing her not to report the alleged discrimination because it prevented and hindered her compliance with Sections 3.d. and 3.l. of the agreement. (Doc. #61, ¶¶ 174-175.) Section 3 of the Physician Agreement is titled "Obligations of Physician" and provides, in pertinent part, as follows:

> d. Physician agrees to maintain membership in good standing on the Medical Staff of Hospital and to abide by the bylaws, rules, and regulations of the Medical Staff, the policies and procedures of Hospital . . . .
>
> l. Physician . . . acknowledges that he or she will not participate in or cause to occur any situation that could jeopardize his or her priority attention to emergency

-11-

>     department patient care, and shall immediately notify an
>     appropriate representative of Hospital and/or Corporation
>     if he or she is unable to resolve any conflict
>     immediately.

(Doc. #61-1, pp. 10-12.)

Plaintiff is unable to rely on the general principles governing a claim for breach of contract because Section 3 of the Physician Agreement imposes duties and obligations on Dr. Perry, not the Schumacher defendants. She may, however, assert a breach of contract claim under the doctrine of prevention of performance. "The doctrine of prevention of performance applies, generally, when a party to a contract is ready, willing and able to perform, but the other party prevents [her] from performing by imposing obstacles not contemplated within the contract." Buckley Towers Condo., Inc. v. QBE Ins. Corp., 395 F. App'x 659, 663 (11th Cir. 2010). The doctrine of prevention of performance bars the preventing party from availing itself of the other party's nonperformance. Id. Here, plaintiff has failed to allege that the Schumacher defendants have attempted to avoid liability under the agreement or have failed to perform any of their obligations under the Physician Agreement. Due to the lack of the requisite allegations, the Court finds that plaintiff has failed to state a plausible claim for breach of contract under the doctrine of prevention of performance.

-12-

**C. Count VIII - Breach of the Implied Duty of Good Faith and Fair Dealing**

In Count VIII, plaintiff alleges that the Schumacher defendants breached the implied duty of good faith and fair dealing for the same reasons set forth in Count VII. Every contract contains an implied covenant of good faith and fair dealing under Florida law, but a breach of this covenant-standing alone-does not create an independent cause of action. Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012) (citing Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005)). Thus, "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." Insurance Concepts and Design, Inc. v. Healthplan Servs., Inc., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) (citing Burger King Corp. v. Weaver, 169 F.3d 1310, 1317-18 (11th Cir. 1999)). A plaintiff must also allege "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." Tiara Condo. Ass'n, Inc., 607 F.3d at 747 (citing Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000)).

The Schumacher defendants assert that plaintiff has failed to allege a breach of the contract or a conscious and deliberate act that frustrates the common purpose of the contract. The Court agrees. Plaintiff simply alleges that the Schumacher defendants failed to comply in good faith with Sections 3.d. and 3.l. of the Physicians Agreement by preventing her from reporting incidents of discrimination and harassment. (Doc. #61, ¶ 183.) These allegations do not plausibly state a claim for breach the implied duty of good faith and fair dealing. Therefore, Count VIII is dismissed.

Accordingly, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss Counts VI, VII, and VIII of Plaintiff's Fourth Amended Complaint (Doc. #65) is **GRANTED**. Counts VI, VII, and VIII are stricken from the Fourth Amended Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of March, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record

-14-