```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

PAMELA M. PERRY,

        Plaintiff,

v.                                  Case No:   2:13-cv-36-FtM-29DNF

THE SCHUMACHER GROUP OF
LOUISIANA, a Louisiana
corporation, THE SCHUMACHER
GROUP OF FLORIDA, INC., a
Florida corporation, COLLIER
EMERGENCY GROUP, LLC, a
Florida limited liability
company, HEALTH MANAGEMENT
ASSOCIATES INC., a Michigan
corporation and NAPLES HMA,
LLC, a Florida limited
liability company,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants The Schumacher Group of Louisiana, The Schumacher Group of Florida, and Collier Emergency Group, LLC's Motion for Summary Judgment (Doc. #244) filed on May 18, 2020.  Plaintiff filed a Response in Opposition (Doc. #258) on June 8, 2020.  For the reasons set forth below, the motion is denied.

**I.**

**A. Factual Background[1]**

The Schumacher Group (TSG) is a corporation that provides healthcare staffing services at medical facilities in certain states throughout the country.[2] (Doc. #142, p. 12.) In May 2011, the Collier Emergency Group, LLC (CEG), a subdivision of TSG, entered into an Exclusive Agreement for Emergency Services (Exclusive Agreement) with Naples HMA, LLC (HMA) to staff the emergency departments at two hospitals under the Physician's Regional Healthcare System: Physician's Regional Medical Center - Pine Ridge (Pine Ridge) and Physician's Regional Medical Center - Collier Blvd. (Collier). (Doc. #244-1, p. 30.) Under the terms of the Exclusive Agreement, CEG was required to staff the emergency department with an adequate number of emergency professionals and designate a physician, reasonably satisfactory to HMA, to be the Medical Director of the Emergency Department. (Id. pp. 30-32.)

---

[1] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[2] TSG consists of the Schumacher Group of Louisiana, Inc., the Schumacher Group of Florida, Inc., and the Collier Emergency Group, LLC.

The agreement further provided that all emergency professionals were subject to the "continuous approval" of HMA, and that HMA may, without cause, direct CEG to preclude any emergency professional from providing medical services if HMA reasonably believed the continued provision of medical services was not in its "best interest." (Id. at 33.) If such a directive was made, CEG was contractually required "within 30 days of [HMA's] directive, [to] exclude that Emergency Professional from providing any further Services." (Id.)

In June 2011, plaintiff Pamela Perry, M.D., an African American female and emergency physician, was recruited by CEG to serve as the Medical Director in the Emergency Department at Pine Ridge. (Doc. #244, p. 5; Doc. #258-1, ¶ 1.) HMA approved of CEG's selection and plaintiff was subsequently offered the position. (Doc. #244, p. 5; Doc. #258-1, ¶ 2.) Plaintiff accepted and entered into three separate agreements with CEG: a Business Associate Agreement, a Physician Agreement, and a Medical Director Agreement. (Doc. #142, p. 12.)

Plaintiff's tenure as Medical Director at Pine Ridge began in July 2011. The satisfaction ratings for the Emergency Department steadily increased under her supervision (id. p. 14), but the improvements were not without complications. Plaintiff testified that Carol McConn, HMA's chief nursing officer, ignored her,

excluded her from meetings, and bypassed her in communications. (Doc. #90, pp. 30, 33.) Plaintiff also stated that McConn rarely spoke with her, but routinely spoke with her predecessor and would bypass plaintiff "to speak with any male physician present." (Id. at 30.)

Similarly, problems with HMA nursing director Bobbie Hamilton began on "day one." (Id.) Hamilton refused to meet with plaintiff for regular weekly meetings to discuss the business of the Emergency Department, ignored her as Medical Director, and "regularly exhibited a pattern of behavior consistent with harassment and being an obstructionist to [plaintiff's] role as Medical Director such as failing to address clinical issues by HMA RN's working with [her] and failing to communicate resolution of these concerns to [her]." (Doc. #90, pp. 30, 73; Doc. #244-6, p. 108.) Per plaintiff, Hamilton also "refused to comply with requests for weekly meetings to ensure a collaborative approach to emergency department management." (Doc. #244-6, p. 108.)

On January 11, 2012, plaintiff sent an email to Hamilton and Dr. Todd Carlson, TSG's Regional President-East Division, regarding the overtly negative attitude nurse Aimee Collins exhibited towards plaintiff. (Doc. #142, p. 14.) Plaintiff also stated that HMA nurse Jacki Ellis had a similar attitude, and accused Ellis of "lying in a medical record, refusing to be

professional towards [plaintiff] in any manner, acting rude, confrontational and directly contradictory with regards to patient care." (Id.; Doc. #244-4, p. 70.)  According to plaintiff, Ellis "did not exhibit similar behavior towards other MD's."  (Doc. #244-4, p. 70.)  Plaintiff believed that the negative behavior exhibited by McConn, Hamilton, Collins, and Ellis was racially motivated.

In March 2012, Dr. Carlson and Marty Anderson, a Senior Regional Vice President at TSG, met with Joseph Bernard, the chief operating officer at Pine Ridge, and McConn for a regularly scheduled quarterly meeting.  (Doc. #244, p. 12; Doc. #258-1, ¶ 27.)  During the meeting, McConn alleged that plaintiff was not getting along or communicating well with the nurses in the department, was not following the hospital sedation policy, and was not performing HMA mandated chart reviews.  (Id.)  Anderson inquired as to the status of an investigation into these allegations, but one had not been done.[3]  (Id.)  Prior to the meeting, Dr. Carlson, Anderson, and Bernard did not know of any

---

[3] Anderson has testified she was surprised HMA had not investigated the allegations against plaintiff prior to the meeting because of the importance of determining "if there's any foundation to the complaints." (Doc. #110-1, p. 47.) However, Anderson did not ask why an investigation had not been done, testifying that as the "vendors," TSG has "to be careful about how aggressively [it] behaves in a meeting" and "need[s] to protect the contract." (Doc. #134, p. 96.)

issues regarding plaintiff's performance.  (Doc. #89, p. 6; Doc. #110-1, p. 45; Doc. #128, p. 36.)

On or about March 7, 2012, plaintiff had dinner with Dr. Carlson and Anderson to discuss the issues raised by McConn at the meeting.  (Doc. #142, p. 15.)  Plaintiff indicated that the alleged deficiencies in her performance were false and that she would provide Dr. Carlson and Anderson with documentation to support her position.  (Id.)  Plaintiff also agreed to provide Dr. Carlson and Anderson with an opportunity to address these issues with HMA.  (Id.)  On March 21, 2012, Dr. Carlson sent plaintiff a text message stating, "We will be clearing the air and bringing the facts to light in front of all admin.  Will take care of it." (Id.; Doc. #244-8, p. 121.)

Approximately two weeks after the dinner, plaintiff told Anderson that she believed racial discrimination was an issue at Pine Ridge.  (Doc. #90, p. 82.) In response to plaintiff's allegations of racial discrimination, Anderson sent plaintiff an email stating the following:

> I'm still bothered about your comments that Bobbie [Hamilton] has been making derogatory racial comments about you. I know that you promised not to give us the names, but I really feel that it's necessary to bring this forward, it absolutely cannot be tolerated and I feel strongly and we need to have this investigated and handled. Would you reconsider? There should be no threat to the parties that either heard the comments or were told the comments. They would be protected.

(Doc. #142, p. 16.) Plaintiff responded, "Unfortunately, I am simply not in a position to provide that specific info. I do not feel it prudent to jeopardize a separate individual's livelihood by involving them in this situation." (Id.)

On March 28, 2012, Dr. Carlson and Anderson attended a meeting with Bernard at Pine Ridge with the intention of discussing the issues regarding plaintiff. (Doc. #110-1, p. 61.) While there is conflicting evidence as to what occurred at the meeting, it is agreed that Bernard requested plaintiff be removed as Medical Director and staff physician.[4] (Doc. #142, pp. 16-17.) Bernard made such a request by invoking the contractual provision permitting HMA to remove a service provider for no cause if it believed that the provider's services were not in Pine Ridge's best interest. (Id.) Dr. Carlson and Anderson agreed to honor the request (id.), and plaintiff was notified of her termination on April 5, 2012. (Doc. #244, p. 14; Doc. #258-1, ¶ 32.)

---

[4] Anderson testified that prior to the request to terminate plaintiff's employment, Bernard was informed of plaintiff's discrimination allegations. (Doc. #110-1, pp. 61-62.) However, Bernard testified that he did not learn of plaintiff's discrimination claims until after her departure. (Doc. #92, p. 10.) Bernard also testified that when he informed Dr. Carlson and Anderson of the reasons for terminating plaintiff's employment, "they whole heartily agreed." (Id. p. 8.)

Plaintiff worked at Pine Ridge until May 22, 2012. (Doc. #142, p. 17.)

### B. Procedural Background

This case involves a long and complicated procedural history,[5] but the relevant procedural facts are as follows. On May 1, 2020, plaintiff filed a four-count Sixth Amended Complaint with the following claims: racial discrimination (Count One) and gender discrimination (Count Two) under 42 U.S.C. § 2000e-2; discrimination under 42 U.S.C. § 1981 (Count Three); and retaliation (Count Four) under 42 U.S.C. § 2000e-3. (Doc. #235.) Counts One, Two, and Four are alleged against TSG and HMA, while Count Three is alleged only against TSG.

On May 18, 2020, TSG filed the Motion for Summary Judgment currently before the Court. (Doc. #244.) Plaintiff filed a Response in Opposition (Doc. #258) on June 8, 2020, and the matter is now ripe for review.

---

[5] The Court previously granted summary judgment to TSG after determining, *inter alia*, plaintiff was an independent contractor and not an employee for purposes of her claims. (Doc. #160.) However, the Eleventh Circuit reversed, finding there was a genuine dispute of material fact regarding plaintiff's employment status. Perry v. Schumacher Grp. of La., 809 Fed. App'x 574 (11th Cir. 2020).

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-

97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

As noted, the Sixth Amended Complaint alleges racial and gender discrimination under 42 U.S.C. § 2000e-2 (Counts One and Two), discrimination under 42 U.S.C. § 1981 (Count Three), and retaliation under 42 U.S.C. § 2000e-3 (Count Four). TSG argues it is entitled to summary judgment on each of these claims. The Court will begin with the three claims brought under 42 U.S.C. § 2000e, otherwise known as Title VII.

#### A. Title VII

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e-3(a). To establish

a prima facie case of discrimination, plaintiff must show "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a prima facie case of retaliation, plaintiff must show "(1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).

When a plaintiff offers circumstantial evidence to establish a Title VII violation, the Court uses the analytical framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lawver v. Hillcrest Hospice, Inc., 300 Fed. App'x 768, 772 (11th Cir. 2008).

> This framework requires the plaintiff to establish a *prima facie* case of discrimination, and then the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action it took. The burden then shifts back to the plaintiff to demonstrate that the proffered reason was pretextual. The plaintiff can establish pretext by showing that the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that the discriminatory reasons motivated the decision than the employer's proffered reasons.

Id. (citations omitted). This burden-shifting framework also applies to retaliation claims supported by circumstantial evidence. Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001).

Regarding Counts One and Two, plaintiff has produced evidence that she is an African America woman whose employment was terminated despite her being qualified for the position. She has also adduced evidence suggesting a similarly situated employee outside of her protected classes was treated more favorably than her.[6] Regarding Count Four, plaintiff has produced evidence that she complained of discrimination, and her employment was terminated shortly thereafter. Based on this evidence, the Court finds plaintiff has established prima facie cases of retaliation and racial and gender discrimination in violation of Title VII.

---

[6] Dr. David Childress, a Caucasian man, was hired to be the Medical Director at Collier's Emergency Department at approximately the same time plaintiff was hired for the same role at Pine Ridge. (Doc. #235, ¶¶ 73-75; Doc. #240, ¶ 74; Doc. #92, p. 11.) Plaintiff has also adduced evidence that there were concerns over Dr. Childress's performance and issues with his communication and leadership style, similar to those HMA conveyed as the primary reasons for plaintiff's termination. (Doc. #92, p. 11; Doc. #128, p. 84.) Nonetheless, there were never any discussions about removing Dr. Childress from his position, and Dr. Childress was allowed to grow into the Medical Director role over time. (Doc. #92, pp. 11; Doc. #128, pp. 84-85.)

See Walden v. Ctrs. for Disease Control & Prevention, 669 F. 3d 1277, 1293 (11th Cir. 2012) ("We are mindful that the plaintiff's burden of establishing a prima facie case in Title VII cases 'is not onerous.'" quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).[7]

As plaintiff has established prima facie cases of discrimination and retaliation under Title VII, the burden shifts to TSG to offer a legitimate, non-discriminatory and non-retaliatory reason for its employment action. In the motion, TSG suggests it acts as a recruitment agency/placement service, and argues it terminated plaintiff's employment because "TSG's client HMA instructed it to do so, and pursuant to the Exclusive Agreement, it was contractually obligated to do so." (Doc. #244, pp. 19, 20.) As noted, under the terms of the Exclusive Agreement, HMA could, without cause, direct CEG to preclude any "Emergency

---

[7] To the extent TSG argues plaintiff cannot establish a prima facie Title VII case against it because all of the alleged discrimination was attributable to HMA (Doc. #244, pp. 18-19), the Court disagrees. See Watson v. Adecco Emp't Servs., Inc., 252 F. Supp. 2d 1347, 1354-55 (M.D. Fla. 2003) (recognizing that under the common law joint employer theory of agency, liability arises when "two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees" (citation omitted)); see also Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994) (in determining if an employer was a "joint employer," whether the employer retained sufficient control was "essentially a factual question").

Professional from providing Services," and if so directed, CEG was required "within 30 days of [HMA's] directive, [to] exclude that Emergency Professional from providing any further Services." (Doc. #244-1, p. 33.) Given TSG's burden of articulating a legitimate, non-discriminatory and non-retaliatory explanation is "exceeding light," Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994), the Court finds TSG has satisfied its burden.

As TSG has articulated a legitimate reason for terminating plaintiff's employment, the burden shifts back to plaintiff to demonstrate the reason is pretextual. As noted previously, a plaintiff can establish pretext "by showing that the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that the discriminatory reasons motivated the decision than the employer's proffered reasons." Lawver, 300 Fed. App'x at 772. "A legitimate, nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible." Boyland v. Corr. Corp. of Am., 390 Fed. App'x 973, 975 (11th Cir. 2010) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). If the proffered reason "is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason,

but must 'meet that reason head on and rebut it.'" Id. (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

Plaintiff argues TSG's justification for the termination, namely that it had no choice but to honor the wishes of HMA, is pretextual because it ignores the true relationship between TSG and HMA. (Doc. #258, p. 5.) In support, plaintiff notes that the Exclusive Agreement provision TSG relies upon provides that HMA can direct CEG to preclude an Emergency Professional from providing services "only if [HMA] reasonably believes the Emergency Professional's continued provision of Services would not be in [HMA]'s best interest." (Doc. #244-1, p. 33.) Accordingly, if HMA failed to provide a reasonable basis for terminating plaintiff's employment, plaintiff argues TSG had the ability "to insist [she] maintain her position, without breaching the Exclusive Agreement." (Doc. #258, p. 7.)

Plaintiff argues TSG's ability to ensure HMA had a reasonable basis for terminating her employment is just one example from the Exclusive Agreement indicating TSG acted as more than a mere staffing agency for HMA. (Id. p. 5.) Other examples from the Exclusive Agreement include (1) TSG's right to designate the Medical Director of Pine Ridge's Emergency Department, (2) TSG's obligation to develop and monitor the implementation of a plan to improve the performance of the Emergency Department, and (3) HMA's

- 15 -

obligation to TSG to provide space, supplies, nurses, and other items for the function of the Emergency Department.  (Doc. #244-1, pp. 31, 32, 34.)  Additionally, under the Exclusive Agreement TSG was obligated to ensure each medical provider had received and read a copy of HMA's compliance manual, had agreed to comply with the requirements of the compliance manual, and would immediately report "any suspected violations of law or other questionable conduct involving [HMA] or any employee to [HMA]'s Compliance Officer and/or the HMA confidential helpline or post office box."  (Id. p. 36).  Plaintiff argues TSG's various obligations and rights under the Exclusive Agreement distinguish this case from others in which courts have determined an employee placement service cannot be liable for Title VII violations committed by its clients against its temporary employees.  See, e.g., Watson, 252 F. Supp. 2d at 1356-57.

Separate from the terms of the Exclusive Agreement, plaintiff argues there is also evidence that TSG had previously acted in a way indicating it was not merely a staffing agency.  (Doc. #258, p. 5.)  For example, when TSG first learned of the alleged issues with plaintiff at the March 2012 meeting, TSG investigated the matter to determine the legitimacy of the complaints.  (Doc. #89, p. 6; Doc. #110-1, p. 61.)  Such evidence seems to undermine TSG's claim that it was required to simply accept HMA's decision to

- 16 -

terminate plaintiff and had no ability to investigate the actions of HMA employees. (Doc. #244, p. 22.)

After considering the parties' arguments as well as the record materials, the Court finds plaintiff has adduced sufficient evidence to create a jury question as to whether TSG's articulated reason for terminating plaintiff's employment was pretext for discrimination and/or retaliation. See Chatman v. Nat'l R.R. Passenger Corp., 2008 WL 4164383, *8, 11 (M.D. Fla. Sept. 5, 2008) (finding plaintiff had produced sufficient evidence of pretext, including comparator disparate treatment evidence, to defeat summary judgment on discrimination and retaliation claims). Accordingly, TSG's request for summary judgment on the Title VII claims, Counts One, Two, and Four, is denied.

**B. Section 1981**

Count Three of the Sixth Amended Complaint alleges TSG violated 42 U.S.C. § 1981, which provides the following:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "The elements of a section 1981 claim in the employment context are the same as the elements of a Title VII

claim." Harrison v. Belk, Inc., 748 Fed. App'x 936, 941 (11th Cir. 2018) (citation omitted). In bringing a section 1981 claim, the plaintiff bears the burden of showing that race was a but-for cause of the injury. Comcast Corp. v. Nat'l Assoc. of African American-Owned Media, 140 S.Ct. 1009, 1014 (2020).

In its motion, TSG argues plaintiff fails to provide any evidence to support a claim that but-for her race, TSG would not have terminated her contract with HMA. (Doc. #244, p. 24.) TSG further argues that it is "undisputed" that it terminated plaintiff's employment at the request of HMA, "and pursuant to the Exclusive Agreement, it was contractually obligated to do so." (Id.) According to TSG, plaintiff's race "would not have altered the decision by TSG to comply with the terms of [the Exclusive Agreement]," and "[i]t would terminate any physician's arrangement upon request by HMA." (Id.)

In her Response, plaintiff argues that she has provided evidence that TSG's asserted reason for her termination, that is TSG's obligation to honor HMA's wishes, is pretextual. (Doc. #258, p. 14.) She also argues that she has presented evidence that had she been a white male physician, like Dr. Childress, she would have been able to maintain her job. (Id.) Accordingly, plaintiff asserts that drawing all inferences in her favor, a reasonable fact-finder could conclude that TSG "served as a but-

for cause of her injury by choosing not to investigate or to notify [HMA] that its decision to terminate [plaintiff] based on the accusation of a discriminator would be a discriminatory act." (Id.)

To make a prima facie case of but-for causation, plaintiff "must show either a similarly situated comparator who was not treated similarly under similar circumstances, or a 'convincing mosaic' of circumstantial evidence suggesting [she] was terminated for discriminatory reasons." Biggers v. Koch Foods of Ala., LLC, 2020 WL 2312033, *5 (M.D. Ala. May 8, 2020) (citing Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220 (11th Cir. 2019)). Having considered the record, the Court finds plaintiff has adduced sufficient evidence to create a jury question on whether her race was the but-for cause of her termination. As discussed previously, there is evidence in the record to support a finding that TSG's explanation for plaintiff's termination is pretextual, as well as evidence to suggest Dr. Childress was treated more favorably than plaintiff. Accordingly, the Court cannot say that a reasonable fact-finder would conclude plaintiff's race was not the cause of her termination, and therefore summary judgment is inappropriate. See Perry, 809 Fed. App'x 574 (Hinkle, J., concurring) ("[T]he record would support a finding that Dr. Perry would not have lost her job had she been a white man instead of an

African American woman.  And the record would support a finding that both TSG and Naples HMA knew it.  These issues must be resolved by a jury.").

Accordingly, it is hereby

**ORDERED:**

Defendants The Schumacher Group of Louisiana, The Schumacher Group of Florida, and Collier Emergency Group, LLC's Motion for Summary Judgment (Doc. #244) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___14th___ day of July, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record