```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

PAMELA M. PERRY,

        Plaintiff,

v.                                     Case No:  2:13-cv-36-FtM-29DNF

THE SCHUMACHER GROUP OF
LOUISIANA, a Louisiana
corporation, THE SCHUMACHER
GROUP OF FLORIDA, INC., a
Florida corporation, COLLIER
EMERGENCY GROUP, LLC, a
Florida limited liability
company, HEALTH MANAGEMENT
ASSOCIATES INC., a Michigan
corporation and NAPLES HMA,
LLC, a Florida limited
liability company,

        Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendants The Schumacher Group of Louisiana, The Schumacher Group of Florida, Inc., and Collier Emergency Group, LLC's Motions in Limine (Doc. ##295, 296, 297, 298, 299) filed on September 18, 2020.  Plaintiff filed an Omnibus Response (Doc. #314) on October 16, 2020.  Also before the Court is plaintiff's Motion in Limine on Her Status as an Independent Contractor at Other Positions (Doc. #301) filed on September 18, 2020.  Defendant Naples HMA, LLC filed a Response (Doc. #312) on October 16, 2020.

**I.**

The Schumacher Group (TSG), consisting of defendants the Schumacher Group of Louisiana, Inc., the Schumacher Group of Florida, Inc., and the Collier Emergency Group, LLC (CEG), is a corporation that provides healthcare staffing services at medical facilities in certain states throughout the country. (Doc. #142, p. 12.) In 2011, CEG entered into an exclusive agreement with defendant Naples HMA, LLC (HMA) to staff the emergency departments at two hospitals in Naples, Florida. (Doc. #244-1, p. 30.) Plaintiff Pamela Perry, M.D., an African American female emergency physician, was hired in June 2011 to serve as the medical director in the emergency department at one of the hospitals, Pine Ridge. (Doc. #244, p. 5.) However, plaintiff's employment was subsequently terminated in 2012 and she has filed suit against the defendants alleging various discrimination and retaliation claims. (Doc. #235.)

**A. TSG's Motions in Limine**

**1. Damages After Termination of TSG's Agreement with HMA**

TSG's first motion in limine seeks to prevent either plaintiff or HMA from introducing evidence relating to any damages that occurred after the termination of TSG's staffing agreement with HMA. (Doc. #295, p. 1.) As noted, in 2011 TSG entered into an exclusive agreement with HMA to staff the emergency departments of

two of HMA's hospitals in Naples, Florida.  Per TSG's motion, it is undisputed that the agreement was terminated on October 1, 2014. (Id. p. 3.)  TSG argues that because plaintiff has failed to present any evidence of damages that "could have reasonably flowed from contract after the termination of same," any reference to damages that occurred after the agreement was terminated would be "purely speculative, not supported by the law and would only serve to confuse or mislead the jury."  (Id. pp. 3, 4.)  Plaintiff responds that she has "substantial evidence" of harm beyond the date the agreement was terminated, and that the Court should not decide this issue on a motion in limine.  (Doc. #314, pp. 8-11.)

The Court agrees with plaintiff's latter argument.  See Burkhart v. R.J. Reynolds Tobacco Co., 2014 WL 12617550, *4 (M.D. Fla. Apr. 30, 2014) ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence.").  While plaintiff has the burden of establishing damages, the Court cannot state that the record precludes the possibility that plaintiff can establish damages which occurred after termination of the Exclusive Agreement.  This motion in limine is denied, but TSG may re-raise this issue at trial.  See id. ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial.  Denial merely means that without the context of trial, the court is unable to determine

whether the evidence in question should be excluded." (citation omitted)).

**2. Previously Dismissed Claims**

TSG's next motion in limine seeks to prevent plaintiff or HMA from introducing evidence of or referring to any claims previously dismissed by this Court. (Doc. #296.) In a prior version of her complaint, plaintiff alleged claims of negligence, breach of contract, and breach of implied duty of good faith and fair dealing. (Doc. #61, pp. 32-36.) The Court dismissed those claims for reasons unnecessary to discuss. (Doc. #82.) TSG now seeks to prevent the parties from referring to any of these dismissed claims.

"District courts routinely exclude evidence and argument related to previously dismissed claims as irrelevant and prejudicial." DeBose v. Univ. of S. Fla. Bd. of Trs., 2018 WL 8919981, *2 (M.D. Fla. Sept. 9, 2018) (citations omitted). However, if the dismissed claims and the remaining claims "share the same underlying facts, it is possible that those underlying *facts* themselves may be admissible." Id. at *3 (citation omitted). Here, plaintiff argues that evidence related to the dismissed claims is relevant to the remaining claims. (Doc. #314, p. 12.) For example, evidence that TSG did not investigate plaintiff's alleged claims of discrimination "while under a clear

- 4 -

contractual obligation to do so" would be relevant to plaintiff's claim of intentional discrimination.  (Id.)

It is clear that no party should present evidence or argument that there were certain claims which have been dismissed by the court.  While reference to such claims are excluded, that is not to say that evidence which may have supported such claims could not also support the current claims.  The Court cannot say that such evidence could not be relevant, and therefore the motion in limine as to evidence (as opposed to references to the nature of the dismissed claims) must be denied without prejudice to raising this issue during the trial.  See Burkhart, 2014 WL 12617550, *4 ("To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." (marks and citation omitted)).

**3. Plaintiff's Family's Medical History**

TSG's third motion in limine seeks to prevent plaintiff or HMA from introducing evidence or referring to plaintiff's "family medical history and allegations that the medical history prevented her from being able to accept TSG's unconditional job offers." (Doc. #297, p. 1.)  According to TSG, it made several unconditional offers of employment to plaintiff after her position with Pine Ridge was terminated, and plaintiff did not accept the offers because of the medical conditions of several family members.  (Id.

p. 3.) TSG argues that any evidence related to the health conditions of plaintiff's family members or argument that such conditions prevented her from accepting a different position is irrelevant. (Id. pp. 3-4.) With the exception noted below, the Court disagrees.

Plaintiff's reasons for refusing TSG's offers of employment are clearly relevant to several issues in this case, including whether plaintiff mitigated her damages. To the extent TSG argues plaintiff's explanation is contradicted by the facts in the record (id. pp. 4-6), such an issue goes to the credibility of the evidence rather than its admissibility.[1]

The Court is also unconvinced by TSG's alternative argument that such evidence would be unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. (Id. p. 4.) The extent of the health issues in plaintiff's family is directly related to the weight the jury may give to her explanations for not accepting the offers. Accordingly, the probative value of the evidence outweighs the risk of prejudice, and the evidence is admissible.

---

[1] TSG also seeks to prevent plaintiff from referring to a heart attack her brother-in-law suffered in 2015 and his subsequent death. (Doc. #297, p. 6.) TSG argues that because these events occurred years after plaintiff rejected TSG's offers of employment, they are irrelevant and prejudicial. (Id.) The Court agrees. Unless plaintiff can demonstrate relevance, evidence relating to these events will not be admitted.

See United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989) ("Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.  The balance under the Rule, therefore, should be struck in favor of admissibility." (marks and citations omitted)).

### 4. Failure to Investigate

TSG's next motion in limine seeks to prevent plaintiff or HMA from introducing evidence or argument suggesting TSG's alleged failure to adequately investigate plaintiff's racial harassment complaints constitutes a violation of Title VII.  (Doc. #298, p. 1.)  TSG argues that a failure to investigate does not constitute a violation of Title VII, and therefore plaintiff should be precluded from introducing evidence or arguing (1) that TSG was required to investigate the complaints to avoid Title VII liability, and (2) that failing to conduct such an investigation, or deficiently conducting it, constitutes a Title VII violation.  (Id. p. 4.)  The Court will grant TSG's motion in part.

Plaintiff alleges three Title VII claims in her Sixth Amended Complaint: Count One (racial discrimination); Count Two (gender discrimination); and Count Four (retaliation).  (Doc. #235, pp. 23-30, 33-35.)  To establish a prima facie case of either discrimination or retaliation under Title VII, plaintiff must show

she was subject to an adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007); Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). The relevant case law indicates that an employer's failure to investigate, standing by itself, does not constitute an adverse employment action for purposes of Title VII. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."); Entrekin v. City of Panama City Fla., 376 Fed. App'x 987, 995 (11th Cir. 2010) (noting that an employer's failure to investigate an employee's complaint was not an adverse employment action for purposes of Title VII's retaliation provision because the employee did not suffer harm as a result of the failure); Sturdivant v. City of Atlanta, 2014 WL 11444087, *18 (N.D. Ga. Feb. 7, 2014) ("In general, an employer's failure to investigate a complaint is not an adverse employment action under Title VII, absent some evidence that the failure to investigate resulted in a material adverse effect on the complaining employee.").

Accordingly, to the extent TSG seeks to prevent plaintiff from suggesting TSG's alleged failure to investigate her complaint constitutes a Title VII violation by itself, the Court will grant

the request. However, as plaintiff argues, such a failure would still be relevant as evidence of other actionable discrimination. (Doc. #314, pp. 15-16); see also Perry v. Schumacher Grp. of La., 809 Fed. App'x 574, 581 (11th Cir. 2020) (concluding it was error to determine as a matter of law that a failure to investigate a discrimination claim cannot serve as evidence of discrimination). Therefore, plaintiff may present evidence of TSG's failure to investigate to support her claims of discrimination and retaliation, but may not assert that such a failure is itself actionable discrimination or retaliation.

### 5. Damages After TSG's Employment Offers to Plaintiff

TSG's fifth and final motion in limine seeks to prevent plaintiff or HMA from introducing evidence relating to any alleged damages that occurred on or after the date TSG made unconditional employment offers to plaintiff. (Doc. #299, p. 1.) TSG argues that because plaintiff rejected alternative offers of employment, and because there is no evidence such a rejection was reasonable, the Court "should either preclude all evidence of economic damages in this case or, alternatively, limit such damages, as a matter of sound public policy." (Id. p. 7.) The Court disagrees.

"In an employment discrimination case, a plaintiff has a duty to mitigate damages. If the jury finds that the plaintiff unreasonably refused an offer of reinstatement from his employer,

then the plaintiff's award of back pay must be reduced." Johnson v. Guerrieri Mgmt., Inc., 437 Fed. App'x 853, 856 (11th Cir. 2011) (citations omitted). The Supreme Court has held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 241 (1982). TSG argues that because plaintiff has failed to present sufficient evidence to justify her rejection of TSG's job offers, the Court should conclude as a matter of law that the rejections were unreasonable. (Doc. #299, pp. 3-6.) The Court agrees with plaintiff that this issue is inappropriate to decide on a motion in limine (Doc. #314, p. 17), as it specifically requires the Court to weigh the evidence. See Burkhart, 2014 WL 12617550, *4 ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence.").

Furthermore, the Court finds that whether plaintiff's rejection of the job offers was reasonable falls within the issue of whether she reasonably tried to mitigate her damages, and that such a question should be determined by a jury. See Voss v. City of Key West, Fla., 24 F. Supp. 3d 1228, 1232 (S.D. Fla. 2014) (agreeing with the defendant that the question of whether the plaintiff made a reasonable effort to mitigate her damages was a question of fact for the jury); Degitz v. S. Mgmt. Servs., Inc.,

996 F. Supp. 1451, 1463 (M.D. Fla. 1998)(concluding that the facts surrounding the issue of whether the plaintiff failed to mitigate damages were "more appropriate for a jury to decide"); see also Eleventh Circuit Pattern Jury Instruction 4.5 (in Title VII cases, jury is instructed that the plaintiff has a duty to mitigate damages and such duty requires the plaintiff "be reasonably diligent" in seeking substantially equivalent employment).  As the jury will be required to determine the reasonableness of plaintiff's mitigation efforts, including those related to the job offers, the Court denies TSG's request to preclude evidence of economic damages occurring after the offers.  Accordingly, TSG's motion is denied.

**B. Plaintiff's Motion in Limine**

Plaintiff's motion in limine seeks to prevent TSG or HMA from introducing evidence as to her status as an independent contractor with other emergency room physician groups and health care providers, both before and after her employment at Pine Ridge. (Doc. #301, p. 1.)  Plaintiff argues that a "key question" for the jury to answer in this case is whether she was an employee or an independent contractor while she worked for TSG and HMA, and that her status while employed elsewhere is irrelevant to that determination.  (Id. pp. 2-4.)

HMA responds that plaintiff's status is relevant to the determination of damages. (Doc. #312, p. 2.) For example, HMA argues that by classifying herself as an independent contractor for tax purposes in subsequent employment, plaintiff was able to receive tax deductions that may have benefitted her and reduced her claim for back pay. (Id. pp. 6-8.) HMA argues it is entitled to present such evidence to the jury, and "[a]tempting to remove any reference to Plaintiff's independent contractor status would only serve to further confuse the jury on what is already an inherently complex determination." (Id. p. 8.) HMA also argues that reference to plaintiff's post-termination work agreements, which list plaintiff as an independent contractor, is necessary to refute plaintiff's evidence of damages and help the jury address the mitigation issue. (Id. pp. 8-11.)

The Court will grant plaintiff's motion in part. The Court is satisfied that plaintiff's employment status and her employment agreements after she was terminated may be relevant to issues relating to damages. Accordingly, the Court will deny plaintiff's request to preclude all reference to her independent contractor status, subject, of course, to reconsideration during the trial upon proper objection. See Ohler v. U.S., 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge,

and the judge may always change his mind during the course of a trial.").

However, the Court agrees that TSG or HMA cannot use plaintiff's pre- and post-termination status as an independent contractor with others to argue she was an independent contractor when she worked for TSG and HMA.  Whether plaintiff was an employee or an independent contractor when she worked before and after her termination is immaterial to the jury's determination of her status during her employment with the defendants.  See Cobb v. Sun Papers, Inc., 673 F.2d 337, 341 (11th Cir. 1982) (using the economic realities test to determine whether a plaintiff is an employee or an independent contractor, under which the economic realities of the employment relationship are viewed in light of common law principles of agency and the employer's right to control and direct the work of an employee).  HMA appears to concede this point, asserting it does not intend to connect plaintiff's independent contractor status in subsequent positions to the employment status at issue in this case.  (Doc. #312, p. 13.)

Accordingly, it is hereby

**ORDERED:**

For the reasons expressed herein, the parties' motions in limine are disposed of as follows:

1. TSG's Motion in Limine (Doc. #295) is **DENIED.**

2. TSG's Motion in Limine (Doc. #296) is **DENIED**.

3. TSG's Motion in Limine (Doc. #297) is **GRANTED in part and DENIED in part**.

4. TSG's Motion in Limine (Doc. #298) is **GRANTED in part and DENIED in part**.

5. TSG's Motion in Limine (Doc. #299) is **DENIED**.

6. Plaintiff's Motion in Limine on Her Status as an Independent Contractor at Other Positions (Doc. #301) is **GRANTED in part and DENIED in part**.

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of November, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record