UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PAMELA M. PERRY,

       Plaintiff,

v.                  Case No:  2:13-cv-36-FtM-29DNF

THE  SCHUMACHER  GROUP  OF
LOUISIANA,   a   Louisiana
corporation, THE SCHUMACHER
GROUP OF FLORIDA, INC., a
Florida corporation, COLLIER
EMERGENCY   GROUP,   LLC,   a
Florida  limited  liability
company, HEALTH  MANAGEMENT
ASSOCIATES INC., a Michigan
corporation and NAPLES HMA,
LLC,   a   Florida   limited
liability company,

       Defendants.

_____

## OPINION AND ORDER

    This  matter  comes  before  the  Court  on  defendants  The

Schumacher  Group  of  Louisiana,  The  Schumacher  Group  of  Florida,

Inc.,  and  Collier  Emergency  Group,  LLC's  Daubert  Motion  in  Limine

to  Exclude  Testimony  of  Dr.  Mark  Cichon  Regarding  Plaintiff's

Pecuniary  Damages  (Doc.  #300),  and  defendant  Naples  HMA,  LLC's

Daubert Motion to Strike and/or Exclude Expert Testimony and Report

of  Mark  Cichon,  D.O.  (Doc.  #306),  both  filed  on  September  18,  2020.

Plaintiff  filed  an  Omnibus  Response  (Doc.  #315)  to  the  motions  on

October 16, 2020.  For the reasons set forth below, the motions are granted in part and denied in part.

## I.

The Schumacher Group (TSG), consisting of defendants the Schumacher Group of Louisiana, Inc., the Schumacher Group of Florida, Inc., and the Collier Emergency Group, LLC (CEG), is a corporation that provides healthcare staffing services at medical facilities in certain states throughout the country. (Doc. #142, p. 12.)  In 2011, CEG entered into an exclusive agreement with defendant Naples HMA, LLC (HMA) to staff the emergency department at two hospitals in Naples, Florida.  (Doc. #244-1, p. 30.) Plaintiff Pamela Perry, M.D., an African American female emergency physician, was hired in June 2011 to serve as the medical director in the emergency department at one of the hospitals, Pine Ridge. (Doc. #244, p. 5.)  However, plaintiff's employment was subsequently terminated in 2012 and she has filed suit against the defendants alleging various discrimination and retaliation claims. (Doc. #235.)

In support of her claims, plaintiff has engaged Dr. Mark Cichon to provide an independent analysis of the impact of her termination "on her career in emergency medicine and on her earnings and future earnings in that position." (Doc. #304-1, p. 3.)  Dr. Cichon, who specializes in emergency medicine and pre-

hospital care, has a bachelor of science degree in biology, a minor in psychology and chemistry, and a doctor of medicine. (Doc. #302-1, pp. 19, 28; Doc. #304-1, p. 17.) He has also completed a two-year professional development program from Harvard which addressed topics such as human resources and finances. (Doc. #302-1, p. 21; Doc. #304-1, p. 17.) Dr. Cichon is currently the Associate Chief Medical Officer and Physician in Chief at Loyola University Medical Center in Illinois, having previously served as Chairman of the Department of Emergency Medicine. (Doc. #304-1, p. 18.) Dr. Cichon has also served as an emergency department medical director at various hospitals since 1996, and taught at various colleges since 1994. (Id.)

In his report, Dr. Chicon offers seven opinions to be expressed at trial. TSG and HMA now seek to exclude Dr. Cichon's opinions on a variety of grounds. (Doc. #300; Doc. #306.)

## II.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 contemplates that the district court serve as gatekeeper for the admission of scientific testimony in order to ensure that any and all expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (marks and citations omitted).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony

will assist the trier of fact.  Arthrex, Inc., v. Parcus Med., LLC, 2014 WL 3747598, *1 (M.D. Fla. July 29, 2014) (citing Tampa Bay Water, 731 F.3d at 1183).  The burden of laying the proper foundation for the admission of expert testimony "is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence."  Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)).  The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination.  Frazier, 387 F.3d at 1258.

### III.

TSG and HMA argue the Court should exclude all of Dr. Cichon's opinions because (1) he is unqualified to opine on the subjects, (2) his opinions are based on an unreliable methodology, and (3) his testimony will not be helpful to a jury.  (Doc. #300, pp. 3-8; Doc. #306, 6-17.)  Having reviewed the seven topics on which Dr. Cichon seeks to offer an opinion, the Court finds they can be divided roughly into two categories: (1) topics related to plaintiff's career prospects, and (2) topics related to plaintiff's financial damages.  While TSG and HMA's motions focus mainly on the opinions related to the latter topics, the Court will address all the opinions offered in Dr. Cichon's report.

**A. Opinions Related to Plaintiff's Career Prospects**

In his report, Dr. Cichon offers four opinions relevant to plaintiff's career prospects following her termination.   Those opinions are as follows:

- "Dr. Perry's positive impact on ER performance would have made her highly likely to remain in her position as medical director."

- "Dr. Perry likely would have been able to continue to work at Pine Ridge Hospital after the termination of the Schumacher Group's contract with Naples HMA."

- "The fact that Dr. Perry held a leadership position for only a short time and then had to go back to a non-leadership position may undermine her credibility as a leader and prevent prospective employers from actually learning about her successful performance as a medical director."

- "Given her qualifications and actual performance at her job at Pine Ridge Hospital, I believe that Dr. Perry would still be working in an ED medical director's position."[1]

(Doc. #304-1, pp. 9-14.)

---

[1] As part of this opinion, Dr. Cichon estimates how much "medical director earnings" plaintiff will "not be able to earn over the remainder of her career." (Doc. #304-1, p. 14.) The Court will address this estimate with Dr. Cichon's opinions on plaintiff's financial damages.

As noted, the first inquiry in determining whether an expert's testimony is admissible is determining whether the expert is qualified to testify on the topic at issue. Arthrex, 2014 WL 3747598, *1 (citing Tampa Bay Water, 731 F.3d at 1183). Having reviewed Dr. Cichon's report and deposition testimony, as well as the arguments of the parties, the Court finds he is qualified to offer the opinions listed above.

Dr. Cichon has extensive experience serving as an emergency department medical director, as well administrative experience as Loyola University Medical Center's Chairman of the Department of Emergency Medicine, Associate Chief Medical Officer, and Physician in Chief. (Doc. #304-1, p. 18.) In these roles, Dr. Cichon has been utilized by Loyola "to give ideas on what compensation would be on what is the market basket for benefits for emergency physicians in [the] area," as well as provide "insight as a chairman to what is [sic] reasonable expectations and job roles." (Doc. #302-1, pp. 50-51.) Dr. Cichon also has experience with transitioning service providers at medical facilities, including being responsible for transitioning physicians and hiring new ones. (Id. p. 73.) The Court finds this sufficient experience to qualify Dr. Cichon to offer opinions on plaintiff's career prospects. See Fed. R. Evid. 702 (permitting a witness to be qualified as an expert based on experience); Anderson v. Techtronic

Indus. N. Am., Inc., 2015 WL 12843836, *2 (M.D. Fla. Apr. 14, 2015)
("The qualification standard for expert testimony is not
stringent, and so long as the expert is minimally qualified,
objections to the level of the expert's expertise go to credibility
and weight, not admissibility." (citation omitted)).  HMA argues
Dr. Cichon is not qualified because his experience practicing
emergency medicine in a university setting does not make him "an
expert in other emergency departments or how they run." (Doc. #306,
p. 9.)  However, "[a]n expert is not necessarily unqualified
simply because [their] experience does not precisely match the
matter at hand."  Furmanite Am., Inc. v. T.D. Williamson, Inc.,
506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007).

The second inquiry for determining the admissibility of
expert testimony is whether the methodology used by the expert is
sufficiently reliable.  Arthrex, 2014 WL 3747598, *1 (citing Tampa
Bay Water, 731 F.3d at 1183).  The reliability prong is distinct
from an expert's qualifications; thus, an expert can be qualified
but his opinions unreliable.  Frazier, 387 F.3d at 1261.  "Exactly
*how* reliability is evaluated may vary from case to case, but what
remains constant is the requirement that the trial judge evaluate
the reliability of the testimony before allowing its admission at
trial."  Id. at 1262.  Having reviewed Dr. Cichon's report and

deposition testimony, the Court finds his opinions regarding plaintiff's career prospects are sufficiently reliable.

The record indicates that in formulating his opinions, Dr. Cichon reviewed, *inter alia*, interrogatories, depositions, TSG records, tax returns, and published articles. (Doc. #304-1, pp. 6-9.)  Regarding the career-prospects opinions at issue, Dr. Cichon also relied upon (1) patient satisfaction scores and email correspondence about the scores collected during plaintiff's tenure at Pine Ridge, (2) his knowledge of emergency room key metrics and the tenure of medical directors meeting those metrics, (3) a review of the current online roster of emergency room physicians working for HMA, and (4) research into emergency rooms located within "a suitable geographic location" for plaintiff and their staffing numbers.  (Id. pp. 9-12.)  The Court finds this sufficient under Daubert.  See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific testimony is reliable based 'upon personal knowledge or experience.'" (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)); Goines v. Lee Mem'l Health Sys., 2019 WL 1101878, *6 (M.D. Fla. Mar. 8, 2019) (finding expert's opinion sufficiently reliable when it was based on examination of record evidence, including depositions, and applied against expert's knowledge and experience).

The final criteria for the admission of expert testimony is the requirement that the testimony assist the trier of fact. Arthrex, 2014 WL 3747598, *1 (citing Tampa Bay Water, 731 F.3d at 1183).  "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Frazier, 387 F.3d at 1262-63. Having reviewed the evidence, the Court concludes that Dr. Cichon's opinions on plaintiff's job performance and the impact of the termination on her career prospects will assist the jury.  For example, such testimony is directly relevant in determining the potential scope of plaintiff's damages and the issue of mitigation. Accordingly, the Court finds the opinions satisfy Daubert and are admissible.

**B. Opinions Related to Plaintiff's Financial Damages**

Dr. Cichon also opines on plaintiff's financial damages as a result of the termination, offering the following:

- Plaintiff would have earned an additional $944,451 in compensation from 2012 to 2019 had she not been terminated, and an additional $1,630,347 between 2020 and 2032;

- Plaintiff suffered $58,670 in damages related to expenses she paid because she was forced to take positions that required her to live away from home;

- Plaintiff is entitled to an additional $504,601 in damages due to a reduced qualify of life.

(Doc. #304-1, pp. 10-16.)

In determining the amount of back pay plaintiff is owed, Dr. Cichon multiplied plaintiff's average monthly earnings while at Pine Ridge by twelve to create a "baseline" for her annual compensation.  (Id. pp. 10-11.)  Dr. Cichon then raised this figure by 3.6% per year in accordance with trends in the Florida market to determine plaintiff's estimated annual income between 2012 and 2019.  (Id.)  Dr. Cichon then subtracted plaintiff's actual earnings from those years and totaled the amount ($944,451). (Id.)

In determining the amount plaintiff would have continued to earn after 2019, Dr. Cichon used plaintiff's medical director stipend and incentive pay to determine she would have earned an estimated $152,016 more per year as of 2020.  (Id. p. 14.)  Dr. Cichon adjusted this amount by 3.6% per year until 2032, the year in which plaintiff would turn sixty-five years old.  (Id.)  When totaled, this amount ($1,630,347) represents the medical director

earnings plaintiff would have earned over the remainder of her career. (Id.)

In determining plaintiff's travel related expenses, Dr. Cichon used plaintiff's 2012 to 2019 tax filings to calculate her mileage deductions as well as hotel and meal expenses. (Id. p. 13.) Dr. Cichon totaled the amount and then subtracted the "tax benefit" plaintiff received from deducting these amounts from her income. (Id.) The remaining amount ($58,670) represents the "expenses [plaintiff] paid because she was forced to take positions that required her to live away from home." (Id.)

Finally, in calculating the amount of compensation plaintiff is owed due to the increased stress and reduced quality of life from having to work away from home ($504,601), Dr. Cichon multiplied the amount plaintiff earned from the year of her termination through 2019 by twenty percent. (Id. p. 15.) Dr. Cichon used the twenty percent figure because he "assume[d] that commuting and quality of life issues related [to] her post-termination positions meant that [plaintiff] had to work a minimum of 20% harder than she would have had she been able to maintain a regular career in one location as a medical director." (Id.)

TSA and HMA argue that Dr. Cichon's damages opinions are inadmissible under each of the three prongs of Daubert. (Doc. #300, pp. 3-8; Doc. #306, pp. 6-17.) Regarding the first prong,

TSG and HMA assert that because Dr. Cichon does not have degrees in statistics, economics, human resources, psychology, or taxation, and because his experience is related to emergency medicine, he is unqualified to opine on plaintiff's financial damages. (Doc. #300, pp. 3-5; Doc. #306, pp. 6-12.) Plaintiff responds that Dr. Cichon is not being offered as an expert in these fields, and thus his opinions do not require such a background. (Doc. #315, pp. 6-7.) Plaintiff further argues that Dr. Cichon's experience as a medical director and administrator qualify him to offer all of his opinions. (Id. pp. 8-9.)

Having reviewed the arguments of the parties as well as Dr. Cichon's report and deposition, the Court is unconvinced he has the requisite experience to opine on plaintiff's damages. It is undisputed that Dr. Cichon is not an expert in any financial areas such as economics or taxation, and he does not have experience calculating economic losses caused by employment termination. While Dr. Cichon may have some practical experience involving taxes and financial matters, such experience is simply insufficient to constitute expertise under Daubert. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC, 2015 WL 11251759, *6 (S.D. Fla. July 6, 2015) ("Although an expert may be permitted to rely on her experience in formulating her opinion, this alone is insufficient; Daubert requires an explanation as to how the

experiences yield the conclusion, why the experiences are sufficient, and how the experiences are reliably applied to the facts.").

Even if Dr. Cichon had sufficient experience to qualify as an expert in calculating financial damages, the Court is unconvinced his calculations of plaintiff's damages would assist the jury. Plaintiff acknowledges that Dr. Cichon "is not an accountant or human resources professional, tax adviser, or statistician." (Doc. #315, p. 7.)  Nonetheless, plaintiff argues "[t]he damage amounts that Dr. Cichon arrived at do not rely on complex economic models, specialized tax knowledge, or statistics," and that "[t]he calculations that he performed . . . are not ones that require the professional skills that the Defendants fault him for lacking." (Id. pp. 7-8.)

Plaintiff is essentially arguing that because Dr. Cichon's calculations are not overly complex, he does not need specialized knowledge or experience to make them.  However, the simplicity of the mathematics is a double-edged sword, because if the calculations are so simple Dr. Cichon can do them without any expertise, then the jury can as well.  See Frazier, 387 F.3d at 1262-63 ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . Proffered expert testimony generally will not help the trier of

fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); Rossi v. Darden, 2017 WL 2129429, *9 (S.D. Fla. May 17, 2017) (determining expert's "basic arithmetic exercise" was "not beyond the understanding of the average lay person" and "therefore does not assist the trier of fact through application of an expert's specialized knowledge or technique"); Bowe v. Pub. Storage, 2015 WL 11233065, *4 (S.D. Fla. May 7, 2015) (excluding expert's damages calculation based on "simple arithmetic, division and multiplication" because such calculations were "not beyond the understanding of the average lay person"); LSQ Funding Grp., L.C. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) ("Dr. Ugone's simple arithmetic calculation is not beyond the understanding of the average lay person and therefore would not help the trier of fact.").

Accordingly, the Court finds plaintiff has failed to meet her burden of demonstrating (1) Dr. Cichon is qualified to offer opinions on plaintiff's financial damages caused by the termination, and (2) that such opinions would assist the jury. Therefore, Dr. Cichon's calculations of plaintiff's lost wages, travel expenses, and quality of life compensation are inadmissible as expert testimony.[2]  But see Fed. R. Evid. 701 (permitting a

---

[2] The Court's ruling would not preclude Dr. Cichon from testifying as to plaintiff's salary when she was terminated, nor

non-expert witness to testify to an opinion that, *inter alia*, does not fall within the scope of Rule 702); <u>U.S. v. Hamaker</u>, 455 F.3d 1316, 1331-32 (11th Cir. 2006) (determining witness's testimony was "permissible lay testimony under Rule 701" when such testimony was based on basic arithmetic calculations).

Accordingly, it is hereby

**ORDERED:**

The Schumacher Group of Louisiana, The Schumacher Group of Florida, Inc., and Collier Emergency Group, LLC's <u>Daubert</u> Motion in Limine to Exclude Testimony of Dr. Mark Cichon Regarding Plaintiff's Pecuniary Damages (Doc. #300) and defendant Naples HMA, LLC's Daubert Motion to Strike and/or Exclude Expert Testimony and Report of Mark Cichon, D.O. (Doc. #306) are **GRANTED in part and DENIED in part** for the reasons expressed herein.

**DONE AND ORDERED** at Fort Myers, Florida, this __4th__ day of December, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record

---

testifying as to trends in the Florida market or the expected retirement age for medical directors, assuming such testimony is otherwise admissible.